IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-00795-PAB

KAYUM ABDUL,

      Applicant,

v.

LORETTA A. LYNCH, Attorney General,

      Respondent.

---

## ORDER DENYING WRIT OF HABEAS CORPUS

---

Applicant, a citizen of Bangladesh, is an illegal alien and has been ordered removed from the United States to his native country.  In his Application for Writ of Habeas Corpus, he complains that United States Immigration and Customs Enforcement ("ICE") is holding him too long before removing him.  On June 30, 2015, the Court ordered Respondent to show cause why the Application should not be granted.  On July 21, 2015, Respondent filed a Response [Docket No. 19], which indicates that Mr. Abdul is the cause of the delay in his removal and, thus, his continued detention.  On September 8, 2015, Respondent filed a Supplemental Response attaching additional documentation relevant to its previous Response [Docket No. 22].  Although given an opportunity to do so, Mr. Abdul has failed to file a reply to the Response.  For the reasons set forth below, the Court will deny the Application.

## I.  RELEVANT FACTUAL BACKGROUND

Applicant is a native and citizen of Bangladesh who illegally entered the United States on May 16, 2014, at or near Hidalgo, Texas.  He is removable pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), because he is an immigrant who was not in possession of a valid, unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document as required. He was placed into removal proceedings with the filing of a Notice to Appear on or about June 5, 2014.  Docket No. 22-2.  On October 17, 2014, an Immigration Judge ("IJ") denied Applicant's relief applications and ordered that Applicant be removed from the United States (removal order).  Docket No. 22-1.  Pursuant to 8 C.F.R. § 1241.1(c), Applicant's removal order became final on November 17, 2014, the date when the appeal period passed.

Once the order of removal became final, ICE began taking steps to remove Applicant from the country.  Docket No. 22-5.  ICE received a travel document for Applicant from the Embassy on or about May 8, 2015, Docket No. 22-6, and attempted to remove Applicant on June 18, 2015.  Specifically, Applicant was scheduled to be escorted to Denver International Airport ("DIA") by ICE agents, who planned to put him on a commercial flight to Los Angeles, California and then on to South Korea and eventually to Bangladesh.  Docket No. 22-7.

Applicant prevented his removal on June 18, 2015 by physically refusing to provide a fingerprint on the Warrant of Removal (Form I-205).  Docket No. 19-1, ¶ 7. Applicant also resisted removal by making statements indicating his unwillingness to comply with ICE's efforts to execute the removal order.  ICE decided not to remove

Applicant on June 18, 2015 because he was uncooperative and the plan for his removal relied on putting him unescorted onto several commercial flights.

In his amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, Applicant raises three claims:  1) an alleged due process violation based on the length of detention; 2) an alleged violation of 8 U.S.C. § 1226 for failure to provide an individualized bond hearing; and 3) an alleged violation of the double-jeopardy clause of the Fifth Amendment.

## II.  ANALYSIS

### A.  Due Process

Under the INA, once a final order of removal has been entered against an alien, the government typically must remove the alien from the United States within ninety days.  8 U.S.C. § 1231(a)(1)(A).  However, 8 U.S.C. § 1231(a)(6) authorizes the Attorney General to detain certain classes of aliens beyond the ninety day removal period:

> 6) Inadmissible or criminal aliens
>
> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Applicant is inadmissible under 8 U.S.C. § 1182.  Thus, his detention is governed by 8 U.S.C. § 1231(a)(6).  The Supreme Court interpreted the constitutionality of 8 U.S.C. § 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678 (2001), where aliens who had been ordered removed were being detained beyond the 90-day removal period.  In that

case, the government could not secure their removal because the designated countries either refused to accept them or did not maintain repatriation agreements with the United States.  Recognizing that a statute permitting indefinite detention of an alien would raise a serious constitutional problem, the Court ruled that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized."  *Id*. at 699. In so ruling, the Court set forth a presumptively reasonable length of detention as lasting six months.  *Id*. at 701.  Moreover, the Court clarified that detention beyond six months does not, by itself, mean that the alien must be released.  *Id*.  "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id*.  After the 6-month period, if the alien can provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  *Id*.  The Supreme Court applied its holding in *Zadvydas* to aliens deemed inadmissible in *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

*Zadvydas* places the burden on the alien to show that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  In the case at bar, Applicant has not shown that his removal is not likely in the reasonably foreseeable future; nor can he.  Unlike the aliens in *Zadvydas*, Applicant's home country provided a travel document allowing his reentry and there is no indication that the document will not be re-issued.  As there are no institutional obstacles to Applicant's removal, it appears very likely to occur in the reasonably foreseeable future.

The fact that ICE was able to secure flights for Applicant also shows that removal is likely in the reasonably foreseeable future.

Moreover, but for Applicant's actions in refusing to cooperate on June 18, 2015, he would have been removed already and no longer in detention.  A detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock.  *See, e.g., Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) (holding that an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him); *Sanchez v. Longshore*, No. 08-cv-01937-WYD, 2008 WL 4447062, at *3 (D. Colo. Sept. 29, 2008) (finding no constitutional violation and noting that "[h]ad the Petitioner cooperated with ICE officials, he likely would have already been deported and thus no longer in detention.").[1]

Applicant has failed to carry his burden of demonstrating that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  Thus, he has failed to show that his detention is a violation of his due process rights.  Accordingly, he is not entitled to habeas corpus relief with respect to his first claim.

---

[1] *See also* 8 U.S.C. § 1231(a)(a)(C), which provides that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."

### B.  Bond Hearing

In his second claim, Applicant asserts that he is entitled to a bond hearing under 8 U.S.C. § 1226.  Section 1226, however, governs pre-removal detainees, *i.e.*, detainees who are in removal proceedings but who do not yet have a final order of removal.  Section 1231 governs detainees like Applicant who have a final order of removal to whom § 1226 no longer applies.  *See Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1189-90 (D. Colo. 2014) (citing cases).  Because Applicant is not being held under § 1226, he is not entitled to relief as to his second claim.[2]

### C.  Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  "The Clause protects only against the imposition of multiple criminal punishments for the same offense."  *Hudson v. United States*, 522 U.S. 93, 99 (1997).  Whether a particular punishment is criminal or civil is a matter of statutory construction.  *Id*.

With respect to the current action, a removal proceeding is a purely civil action to determine an alien's eligibility to remain in the country, not to punish past transgressions.  *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038-39 (1984).  Thus, various constitutional protections that apply in criminal trials are not required in removal proceedings.  *Id.*; *see also United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th

---

[2]  Moreover, detention of an alien pending removal, even without a bond hearing, does not violate substantive due process rights as long as removal remains reasonably foreseeable.  *See e.g., Wang v. Ashcroft*, 320 F.3d 130, 147 (2nd Cir. 2003) (citing *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)); *Lovell v. I.N.S.*, 2003 WL 22282176 (E.D.N.Y. May 21, 2003).

Cir. 2004).  Because removal proceedings are inherently civil in nature, courts, including this one, have held that they cannot form the basis for a double jeopardy claim.  *See, e.g., De La Teja v. United States*, 321 F.3d 1357, 1364-65 (11th Cir. 2003) (holding that petitioner's detention during deportation proceedings was civil in nature and thereby precluded application of the Double Jeopardy Clause); *United States v. Yacoubian*, 24 F.3d 1, 10 (9th Cir. 1994) (Double Jeopardy Clause inapplicable because deportation proceedings are not criminal in nature); *Gisbert v. United States Atty. Gen.*, 988 F.2d 1437, 1442 (5th Cir. 1993) (alien's detention pending removal did not constitute punishment); *Valerga v. Holder*, No. 13-03014-PAB, 2014 WL 103551 (D. Colo. Jan. 9, 2014).  Therefore, Applicant's claim that his detention violates his Fifth Amendment right against double jeopardy is without merit.

**III. CONCLUSION**

Based on the authority set forth above, and upon full consideration of the record presented by way of the parties' submissions, the Court finds that Applicant has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241.  Accordingly, it is

**ORDERED** that the Amended Application for Writ of Habeas Corpus Pursuant to 28 USC 2241 [Docket No. 6] is **DENIED**.  It is further

**ORDERED** that the Prisoner's Motion and Affidavit for Leave to Proceed Under 28 U.S.C. § 1915 in a Habeas Corpus Action [Docket No. 5] is **DENIED** as moot as Applicant paid the $5.00 filing fee.

DATED October 16, 2015.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge